UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THERESA M. BOWEN,

                Plaintiff,

          v.                                  02-CV-749

NIAGARA MOHAWK
POWER CORPORATION.

                Defendant,

APPEARANCES:               OF COUNSEL:

THERESA M. BOWEN
Plaintiff, *pro se*
120 Brookfield Road
Mattydale, NY 13211-1402

BOND, SCHOENECK             ROBERT A. LaBERGE, ESQ.
& KING, PLLC
Attorneys for Defendant
One Lincoln Center
Syracuse, NY 13210

HOWARD G. MUNSON, SR. J.

MEMORANDUM DECISION AND ORDER

**BACKGROUND**

       Defendant filed a motion for summary judgment on May 14, 2004. After

granting a series of plaintiff's requests for extensions of time to respond to defendant's

motion, and no reply was forthcoming,  plaintiff was served with a notice to comply

with the Local Rules of the Northern District of New York by responding in writing to defendants' summary judgment motion and serve and file all required papers by a specified date.  Defendants would have a time period in which to reply to plaintiff's papers, if deemed necessary. The court would take the motion on the submitted papers only.

The court's notice was sent to plaintiff's last two known addresses, but none of the required opposition papers were ever received by the court.  Therefore, the court will now consider defendant's summary judgment motion.

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wilkinson v. Russell, 182 F.3d 89, 96-97 (2d Cir.1999). The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir.1995); Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir.1990). At its core, the Court's function in deciding a motion for summary judgment is "issue finding," not "issue resolution." Gallo v. Prudential Residential Services, 22 F.3d 1219, 1224 (2d Cir.1994).

The Second Circuit, in the seminal case Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241 (2d Cir.2004), addressed the proper analysis that district courts should employ when presented with an unopposed motion for summary judgment. The court held that "Fed.R.Civ.P. 56, governing summary judgment motions, does not

2

embrace default judgment principles." Id. at 242. Thus, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Id. In addition, "[a]lthough the failure to respond may allow the district court to accept the movant's factual assertions as true, see Local Civ. R. 56.2," id. at 246, the district court "must be satisfied that the citation to evidence in the record supports the assertion." Id. at 244.

The following facts are taken from the defendant's statement of undisputed material facts because plaintiff has failed to submit such a statement pursuant to Local Rule 7.1(3).  Consequently, the facts set forth in defendant's 7.1(3) statement of undisputed material facts are deemed admitted. See Local Rule 7.1(3) of the Northern District of New York; Fed R. Civ. P. 56.  See also Gubitosi v. Kapica,154 F.3d 30, 31 n. 1 (2d Cir.1998) (accepting as true the facts alleged in the defendant's statement of undisputed facts because the plaintiff failed to file a responsive statement); Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir.1984) (holding that the facts set forth in defendant's statement were properly admitted because the plaintiff failed to controvert those facts with affidavits or other evidence).

Plaintiff was hired by defendant on August 20, 1973.  During her employment, plaintiff was represented by the International Brotherhood of Electrical Workers Local 97 or its predecessor local unions ("the Union").  Defendant and the Union have entered a series of collective bargaining agreements which provided that vacant bargaining unit positions were to be filled through a posting and bidding procedure whereby positions must be given to the most qualified bidder with the most seniority with the defendant.

3

Plaintiff had held diverse positions with defendant through her years with defendant, and, in 1991, she bid on a Consumer Representative position with the Central Region Sales and Service Department in Syracuse, NY, using the bidding process.  As the senior qualified bidder, plaintiff was given the position, and remained in the post until July 20, 1999, when she started a medical leave of absence due to anxiety difficulties.

Late in 1998 and the start of 1999, plaintiff had some communication problems by violating established beeper procedures and by not responding when defendant attempted to page her.  In spite of having  informal counseling with her superiors, her communication problems persisted.

On June 22, 1999, plaintiff's superiors met with her union representative to discuss her violations of various departmental procedures on June 21 and 22. On June 23, 1999, a formal letter of reprimand was issued to plaintiff to confront her performance deficiencies.  The letter further counseled that additional disciplinary action would result if plaintiff did not follow departmental procedures in the future.

On July 9, 1999, plaintiff misused the sign out sheet when leaving the office, did not respond to at least two pages, and could not be found by her supervisor.  Later that day, she and her Union representative met with her supervisors to discuss these incidents. When the meeting concluded, the supervisors stated that another meeting would be held before a final determination would be made as to whether or not plaintiff would be disciplined.

On July 16, 1999, the respective parties met again.  The supervisors discussed her sign out and beeper violations with her, advised her that they would not take disciplinary

4

action against her, but wanted her to commit that she would follow departmental procedures in the future.  Defendant also agreed to revise and reissue the June 23, 1999 letter of reprimand that plaintiff had been given earlier.

In July 1999, Mark Matloff, Ph.D., notified defendant that he was treating plaintiff and she would be unable to work due to anxiety, depression and panic attacks. The defendant accepted this diagnosis of plaintiff's condition and allowed her to take a medical leave of absence.  Plaintiff continued to receive her full salary and medical benefits during her leave of absence.  Dr. Matloff sent monthly reports to defendant which showed that plaintiff's condition would not permit her to return to work.

After plaintiff had been on medical leave for several weeks, defendant scheduled an independent examination to assess her ability to return to work. On August 31, 1999, John Tanquary, M.D., after conducting this  examination, concurred with Dr. Matloff's opinion that plaintiff was unable to return to work.  Dr. Tanquary  indicated that plaintiff felt that her work environment as non-supportive, hostile and threatening, and, because of these feelings, she would very likely be incapable of following the policies and procedures required for her position.

Based on these two doctor's reports, Dr. David Seeley, the defendant's medical director, recommended that plaintiff not be returned to her position, but was permitted to stay on medical leave.  The defendant then encouraged plaintiff to bid for other positions outside of the Central Regional Sales and Service Department during her medical leave.  However, when her Union representative inquired if she was bidding for other jobs with defendant, she replied that she was not doing so, and never even

considered it.

On December 10, 1999, Dr. Matloff completed a Physician's Confidential Statement of Disability form opining that plaintiff was unable to return to her former department. On December 30, 1999, he wrote the defendant a letter which reiterated this opinion, and recommended that a reasonable accommodation be made to return her to a less stressful environment. Ann Wisniewski, a Case Management Nurse for defendant, requested the doctor to clarify this recommendation. In his reply letter of January 10, 2000, Dr. Matloff stated that plaintiff had no intellectual impairment that would prohibit her from performing the actual functions associated with the Consumer Representative position, but could not return to that position due to her apprehension of the hostile work environment there. The letter did not explain what the doctor meant that plaintiff be placed in a less stressful work environment.

Plaintiff's 26-week disability leave expired near the end of January 2000. She continued to receive her full salary and benefits until her paid holiday and vacation time were exhausted.

In February 2000, the defendant scheduled another independent examination for plaintiff by Thomas M. Griffiths, Ph.D. After making his examination, Dr. Griffiths concurred with the opinions of Drs. Matloff and Tanquary, that plaintiff not go back to work at her former position.

Based on these medical determinations, the defendant offered plaintiff disability retirement benefits on March 18, 2000. Initially, plaintiff rejected this offer, but later accepted them in June 2000. Defendant agreed that plaintiff could work elsewhere

without endangering her disability benefits, and plaintiff given these benefits dating back to March 18, 2000.

Dr. Matloff continued to provide defendant with information indicating that she still was unable to return to her former position.  This was consistent with the data the company received from other medical personnel who had examined plaintiff.

In mid-April 2000, plaintiff filed an age and disability complaint with New York State Division of Human Rights ("Division"), and cross filed it with the federal Equal Employment Opportunity Commission. ("EEOC").

In December 2001, the Division issued a determination that its investigation found no probable cause to believe that defendant committed age or disability discrimination in making employment decisions regarding plaintiff.  This decision was not appealed by plaintiff to the New York State Supreme Court.  The EEOC later issued a Dismissal and Notice of Rights on March 8, 2002, adopting the findings of the Division in their entirety.

## DISCUSSION

In general, in order to defeat a motion for summary judgment on an employment discrimination claim, the non-moving party must show "that sufficient evidence existed in the record to support a reasonable finding of discrimination. Such evidence may be established directly by demonstrating that a discriminatory reason more likely than not motivated the employer, or indirectly by showing that the employer's explanation is

unworthy of credence." <u>Gibson v. American Broadcasting Companies</u>, 892 F.2d 1128, 1132 (2d Cir.1989) (citing <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed.2d 207 (1981)). As stated by the Second Circuit in the <u>Gibson</u> case:

> The possibility that a material issue of fact may exist does not suffice to defeat the motion; upon being confronted with a motion for summary judgment the party opposing it must set forth arguments or facts to indicate that a genuine issue--not merely one that is colorable--of material fact is present.

892 F.2d at 1132.

Plaintiff instituted this lawsuit against defendant Niagara Mohawk Power Corporation in June 2002.  The plaintiff's complaint asserts causes of action under the New York Human Rights Law - New York Executive Law § 297(9) N.Y., New York State common law, the Civil Rights Act of 1991, 42 U.S.C § 1981(a), the Americans with Disabilities Act ("Act"), and the Age Discrimination in Employment Act ("ADEA").

28 U.S.C. § 1367(a). Section 1367(a) "provides that a district court with original jurisdiction over a federal claim 'shall have supplemental jurisdiction' over all related state claims." <u>Small v. City of New York</u>, 274 F.Supp.2d 271, 282 (E.D.N.Y.2003). A state claim is sufficiently related "if it and the federal claim 'derive from a common nucleus of operative fact.' " <u>Cicio v. Does</u>, 321 F.3d 83, 97 (2d Cir.2003)  ; <u>Kirschner v. Klemons</u>, 225 F.3d 227, 239 (2d Cir.2000) (stating that "pendent party jurisdiction [is] possible where the claim in question arises out of the same set of facts that give rise to anchoring federal question claim against another party").

Supplemental jurisdiction may be declined, of course, where the state claim

"raises a novel or complex issue of state law" or where "exceptional circumstances" exist. 28 U.S.C. § 1367(c)(1) and (4). Defendant has not shown any novel issue of state law that will necessarily be raised in relation to the claims brought against it, nor are there exceptional circumstances, thus, the court will exercise jurisdiction over plaintiff's state law claims.

The defendant correctly observes that the age and disability claims that the plaintiff asserts under state laws are barred by the statutory election-of-remedy provisions in the New York State Human Rights Law ("NYHRL") § 297(9) of the New York Executive Law provides in pertinent part: Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction ... unless such person had filed a complaint hereunder or with any local commission on human rights ... provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division. N.Y. Exec. L. § 279(9).

As the Court of Appeals for the Second Circuit has found, by the terms of the NYHRL, claims once brought before the NYSDHR, may not be brought again as a plenary action in another court. York v. Association of the Bar of the City of New York, 286 F.3d 122, 127 (2d Cir.2002). Because the plaintiff has already asserted the discrimination claims she brings here before the NYSDHR, and because the NYSDHR dismissed those claims on the grounds that there was no probable cause to believe that

9

the alleged discrimination occurred, the plaintiff is barred from relitigating those claims pursuant to the NYHRL.  Moodie v. Federal Reserve Bank of New York, 58 F.3d 879, 884 (2d Cir.1995) (Court affirmed district court's dismissal of *pro se* plaintiff's state law discrimination claims due to jurisdictional bar of § 279(9)).  Hence, the claims plaintiff brought pursuant to New York State Human Rights Law are futile and the addition of these claims will not be permitted.

New York does not recognize a common law cause of action for abusive discharge.  "We have noted that significant alteration of employment relationships, such as the plaintiff urges, is best left to the Legislature."  Murphy  v. American Products Corp., 58 N.Y.2d 293, 301-302, 461 N.Y.S.2d 232 (1993).   Nor is there an exception based on the general notion of public policy. Wieder v. Skala, 80 N.Y.2d 628, 637; 593 N.Y.S.2d 752, 756 (1992).  Horn v. N.Y. Times, 100 N.Y.2d 85, 92, 760 N.Y.S.2d 378, 382 (2003)(rejecting the public policy argument, citing Wieder).  Thus, plaintiff's claim of discharge in violation of New York public policy must be dismissed.

Plaintiff has set forth two other claims, one, under the ADA, that defendant refused to make her reasonable work accommodation because of  her disability, the second, under the ADEA, that defendant would not let her return to work due to her age.

To recover on an accommodation claim, a plaintiff must show that (1) her employer was subject to the ADA; (2) she was "disabled"; (3) she was "otherwise qualified" to perform the essential functions of her job; and (4) the employer had notice of her disability and failed to provide reasonable accommodation. Lyons v. Legal Aid Society, 68 F.3d 1512, 1515 (2d Cir.1995). The question of whether a proposed

accommodation is reasonable is "fact-specific" and must be evaluated on "a case-by-case basis." Wernick v. Federal Reserve Bank, 91 F.3d 379, 385 (2d Cir.1996). Summary judgment is nevertheless appropriate where a plaintiff fails to identify a facially reasonable accommodation that the defendant refused to provide. Kennedy v. Dresser Rand Co., 193 F.3d 120, 122 (2d Cir.1999), cert. denied, 528 U.S. 1190, 120 S. Ct. 1244, 146 L. Ed.2d 103 (2000), or when the employer offers an accommodation that is "plainly reasonable." Wernicke, 91 F.3d at 385; see, e.g., Guise-Mills v. Derwinski, 967 F.2d 794, 798 (2d Cir.1992).

To qualify as disabled under subsection (A) of the ADA's definition of disability, a claimant must initially prove that he or she has a physical or mental impairment. See 42 U.S.C. § 12102(2)(A).  Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity. See 42 U.S.C. § 12102(2)(A).  The Rehabilitation Act regulations issued by the Department of Health, Education, and Welfare (HEW) provides that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 CFR §§ 1630.2(j)(3)(i)(2006).

The difficulty that plaintiff had in accomplishing her various job duties were due to the stress of her workplace.  Workplace induced stress and anxiety related conditions are not *per se* disabilities under the ADA. Holihan v. Lucky Stores, 87 F.3d 362, 364 (9th Cir.1996) (finding that a plaintiff who "experienc[ed] stress and anxiety related problems [anxiety and depression] precipitated by work" at one particular job was not substantially limited in the major life activity of working); Williams v. New York State Department

of Labor, 2000 WL 33175735, at *17 (S.D.N.Y. May 25, 2000) (stress induced by co-workers not sufficient to meet legal criteria of disability); Mescall v. Marra, 49 F.Supp.2d 365, 373 (S.D.N.Y.1999) ("By her own admission, [plaintiff's] mental impairment [i.e. stress, depression and anxiety] was caused or exacerbated by her interaction with [her supervisor], resulting in her doctor's recommendation that she did not return to work at [that location] .... [S]uch a temporary mental condition would not qualify as a disability under the ADA."). Therefore, to the extent her stress and anxiety independently contributed to plaintiff's work limitations, they cannot be considered.

The inability to perform a single specific job does not qualify as a "substantial limitation." Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 723 (2d Cir.1994) ("[A] person found unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working."); see also 29 C.F.R. § 1630.2(j)(3)(i)("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working"). Additionally, plaintiff stated in p. 14 of her deposition that, "I am not disabled," and, although other jobs were open to her at her employers' facility,   she didn't bid for any other jobs because she thought her union president was working with her employer to get her a new placement there. (Plaintiff Dep. p. 145).

Under the circumstances present in this case, plaintiff did not establish that she had a disability under the ADA.

Plaintiff alleges that defendant violated the ADEA by refusing her to return to work because of her age.  This statute provides, in pertinent part, that it is unlawful for

an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ...." 29 U.S.C. § 623(a)(1). The ADEA further provides that its prohibitions serve to protect only those individuals who are at least forty years of age. 29 U.S.C. § 631(a).  While the ADA might prohibit adverse employment against an individual, the ADEA protects only against discrimination motivated by age. 29 U.S.C. § 623. To establish a discrimination claim, a plaintiff may rely on direct evidence, indirect evidence, or a combination of both direct and indirect evidence. See, e.g., Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-101, 123 S. Ct. 2148, 2154-55, 156 L. Ed.2d 84 (2003). Regardless of the type of evidence offered, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 286 (4th Cir.2004).

In this type of case, a plaintiff relies on the judicially created scheme of proof originally established for use in Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), and later adapted for use in the context of age discrimination under the ADEA. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981).  That scheme requires first that a  plaintiff prove, by a preponderance of the evidence, a *prima facie* case of discrimination. Stokes v. Westinghouse Savannah River Co., 206 F.3d 420, 429 (4th Cir.2000).

To demonstrate a prima facie case of discrimination under the ADEA, a plaintiff

must show that (1) he/she is a member of a protected class, (2) he/she applied for the position in question, (3) he/she was qualified for the position, and (4) he/she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.  Carter v. Ball, 33 F.3d 450, 458 (4th Cir.1994). Once plaintiff has established his *prima facie* case, defendant must respond with evidence that it acted with a legitimate, nondiscriminatory purpose. Stokes, 206 F.3d at 429. If defendant meets this burden of production, the presumption of discrimination created by the *prima facie* case vanishes, requiring plaintiff to prove that defendant's proffered reason is a pretext for discrimination in order to recover. Id.

In the present case, plaintiff contends that defendant discriminated against her on the basis of age by failing to accommodate her.  However, plaintiff presents absolutely no evidence to establish a *prima facie* case of age discrimination on this claim. Plaintiff does not present any evidence regarding accommodations she sought were given to younger workers, nor does she present any evidence that younger workers were able to obtain accommodations more easily.  Moreover, when asked during her deposition if she had "any evidence to support your assertion that your age was in any way a factor in your ability to return to work at Niagara Mohawk, plaintiff replied, "No." (Bowen Aff. p 17).

Because plaintiff has failed to present any evidence on this issue, the court finds that plaintiff has failed to present evidence to establish a *prima facie* case of age discrimination, and plaintiff's claims here fail as a matter of law.

The Civil Rights Act of 1991, 42 U.S.C. § 1981a, gives a prevailing plaintiff in an intentional employment discrimination case, the ability to recover compensatory and

punitive damages from the defendant. See 42 U.S.C. § 1981a; Huckabay v. Moore, 142 F.3d 233, 241 (1998). It applies not only to actions brought under Title VII of the Civil Rights Act of 1964, but also to actions brought under the ADA and the Rehabilitation Act. See 42 U.S.C. § 1981a(a)(2). This statute does not create a new substantive right or an independent cause of action; rather, it "enhances the remedies otherwise available for intentional employment discrimination." Perry v. Dallas Independent School District, 1998 WL 614668, at *1 n. 1 (N.D.Tex. Sept.2, 1998).

"Implicit in § 1981a is the requisite that an action will not exist under the Civil Rights Act absent a primary claim under another substantive act." Presutti v. Felton Brush, Inc., 927 F. Supp. 545, 550 (D.N.H. 1995)(citing West v. Boeing Co., 851 F. Supp. 395, 401 (D.Kan.1994)). In short, "[t]here is no such thing" as a § 1981a claim. Perry v. Dallas Independent School System, 1998 WL 614668, at *1; accord Gates v. City of Dallas, 1998 WL 133004, at *7 (N.D.Tex. Mar.18, 1998). As this provision merely provides remedies additional to those already available, it applies only if the plaintiff otherwise establishes intentional discrimination on the part of the employer under another substantive act. Huckabay, 142 F.3d at 241; ; Presutti, 927 F.Supp. at 550. In this instance, because plaintiff's claims under the ADA and ADEA lack merit, she, likewise, has no right to relief under § 1981a. Perry, 1998 WL 614668, at *1; Presutti, 927 F.Supp. at 550-51; Kozlowski v. Extendicare Health Services, Inc., 2000 WL 193502, *1 n. 1 (E.D.Pa. Feb. 17, 2000); Powers v. Pinkerton, Inc., 28 F.Supp.2d 463, 472 (N.D. Ohio 1997), aff'd, 168 F.3d 490 (6th Cir.1998); McCormack v. Bennigan's, 1993 WL 293895, *2-*3 (E.D. Pa. July 30, 1993).

Accordingly, for the reasons stated above, the court **GRANTS** defendant's motion for summary judgment as to plaintiff's federal and state law claims in their entirety, and the complaint is **DISMISSED.**

**IT IS SO ORDERED**

Dated: October 30, 2006
      Syracuse, New York

Howard G. Munson
Senior  U.S. District Judge